TALIAFERRO, Judge.
On the theory that he was permanently totally disabled from the effects of an accident on or about October 18, 1948, while performing the duties of his employment with defendant, Arkansas Oak Flooring Company, Incorporated, plaintiff instituted this suit against his employer-and its insurer, Fidelity and Casualty Company of New York, to recover workmen’s compensation at the rate of $30 per week for 400 weeks, less payments made on that account.
The gravamen of the action is embodied in paragraph 5 of the petition, which we quote, to wit: “ * * * while pulling a board 5/4" x 16" x 14' off a stack and placing it in a rip saw, the board kicked back and around out of the saw, causing petitioner to slip, knocking him against an iron table the board striking petitioner’s right hand, and when petitioner struck said table, his body was in a twisted position and he strained his right side and felt a sharp pain in his right inguinal region.”
He then alleged that as a result of the accident “the bones in and about petitioner’s right hand were crushed and he suffered *770 an inguinal hernia”, from which said disability arose.
In a supplemental petition, it is alleged that in addition to the injuries described in his original petition, he also sustained “a right sacro-iliac strain in the lumbar-sacral region with an involvement of the right sciatic nerve, and as a result thereof petitioner is and has been totally and permanently disabled”, etc.
Defendants admit that on or about the alleged date plaintiff did sustain a minor injury, being a bruise of the right wrist. They aver that prior to this accident plaintiff's right little finger was stiff or malformed. They deny that plaintiff is disabled to perform work of the character he has followed. There was judgment for plaintiff as by him prayed. The defendants prosecute appeal.
Plaintiff’s version of the facts of the alleged accident, and what happened soon thereafter, in so many respects is so palpably at variance with established facts, that his testimony as a whole, deserves the closest scrutiny. He testified, as by him alleged, that the board that kicked back from the rip saw and struck him was S/4" thick, 12" wide and 14' long; that he was standing on the left side of and facing the board as it passed over the rollers and through the saw; that all of the board had passed the saw, excepting four feet (next to him) when the accident occurred.
In describing his and the board’s movements at moment of the accident, he said: “It swiped around backwards, and I jumped around the side, out of the way of the board, and it struck me.”
He was asked if the board struck his right hand, to which he replied: “Yes, sir. It bumped that as I was going around and that boy that catches sticks caught me, and I called the bossman and told him I had to go in, I was hurt.”
Here, it is well to interpolate that the boy referred to was not introduced as a witness by plaintiff and no excuse is offered to explain the failure to do so. When pressed for the identity of the “bossman” he called and advised of the accident, he finally named Adam Rue. This man was a millwright and was on duty • at that time, but he positively denies that he knew anything about the accident and likewise denies that plaintiff notified him of it. Other superiors of plaintiff, to whom notice of an accident would ordinarily be given, testified as did Rue. Plaintiff also testified that Willie Harris, another co-laborer was there and saw the accident. Harris denied seeing it, although not far away at the time.
It is also of some importance to note that the testimony clearly shows that no such table, as plaintiff testified he fell against and was removed from, was about the locus of the accident.
Plaintiff testified that immediately after the accident he felt pain in his right side above the belt line, and in the lower part of his stomach; that he at once went to his home, called a cab and reported to the clinic of Dr. Blanchard Texada, the employer’s regular physician. This is not entirely true. He went to the clinic on October 25th and in giving a history of the accident, said it occurred on the 20th. The company records disclose that he quit work on the 21st. Therefore, four days elapsed between date of the accident and the trip to the clinic.
We here make note of the fact that plaintiff has had a most unusual record of accidents and operations. Prior to the accident involved herein, the time not being fixed, he underwent an appendectomy. On another occasion he lost two fingers of the left hand. In November, 1941, he suffered an accident in which his right hand and wrist were injured. In September, some thirty days prior to the present accident, he claimed to have had an accident that involved the lower part of his back and right inguinal region.
Dr. Texada testified that he treated plaintiff for the alleged September accident. He then had a swollen testicle, due to gonorrheal infection, for which a sus-pensory was prescribed. Plaintiff says the suspensory was recommended after the October accident. Again he is in error.
As regards the back injury, on plaintiff’s profession of pain and the subjective symp *771 toms, Dr. Texada’s diagnosis was .lumbo-sacro-iliac strain. Strapping, appropriate and normal treatment, was applied. This immobilized the back. In about ten days this was removed. The plaintiff reported for duty on October 19th. He performed his regular duties until October 21st, which is the true date of his last accident.
In giving the fact history of the last accident he stated to Dr. Texada 'and to Dr. Aderhold, associated with Dr. Texada, that “a board ‘hit his right hand 'and wrist”, emphasizing the wrist. He did not then mention about being thrown against and removed from the mythical table, as alleged by and testified to by him; nor did he mention the alleged back injury or hernia.
Examination of the plaintiff on October 25th, revealed slightly swollen right wrist, without evidence of contusion. X-ray disclosed no fractures of wrist or hand; However, evidence of the effects of the November, 1941 injury was obvious, consisting of “old fracture and ankylosis of the proximal end of the phalangeal joint; * * * mal-union of the head'of the fifth metatarsal bone with displacement,” etc. These conditions refer to the right little finger.
The Roentgenologic and Fluroscopic findings of the Baptist Hospital in Alexandria, Louisiana, made on April 13, 1942, some five months after the November, 1941 accident, in part, read; “Right Hand (AP & LAT): The fifth metacarpal bone shows a fracture in the distal portion of the shaft with the distal fragment displaced to the palmar aspect causing some shortening and a hump in the palm of the hand. There is union of the fragments. The distal end of the second metacarpal bone shows evidence of a fracture also but there is very little displacement in this fracture. The wrist and hand show a slight amount of osteoporosis.”
The accident referred to was caused by the hand being caught in a roller of a planing mill. The report further states: “There was some stiffness of all the fingers but more of the fifth finger. He can not completely close the hand and there is some fullness and thickness of the palm — disability at least 25%.”
After the examination on October 25th, to allay the swelling in the wrist, an elastic bandage was applied to it and a portion of the hand. Infra-red heat was also applied. At the proper time the bandage was removed and the patient advised to passively exercise the hand and wrist to prevent swelling and stiffness that might arise from disuse.
On November 4th, plaintiff reported back to the clinic, at which time he was complaining of pain and swelling in the right little finger. X-ray disclosed a fresh fracture of the proximal phalanx of this finger. Plaintiff informed the doctor that this fracture occurred the night previous while the hand was being massaged. It was immobilized by a small splint. This splint was applied so that the remainder of the hand would be unaffected thereby. It was the doctor’s opinion that even with the splint in place the hand could be used as formerly. Dr. Aderhold was asked: “In the course of your examination and treatment could you find anything that might have aggravated or increased the disability of the old injury of that hand?”
He replied: “None, whatever.”
Plaintiff continued to complain of pain in the lower portion of his back, but nothing objective was found to confirm the complaints. It was finally diagnosed by Dr. Aderhold, possibly out of an abundance of caution, as lumbar sacro-iliac strain, and appropriate treatment therefor administered. Dr. Aderhold last examined plaintiff thoroughly on June 4th, two days prior to trial of the case. He was then still complaining of pain in his lower back. Customary and approved tests were made but these, in the doctor’s opinion, did not confirm the professions of pain made by plaintiff. It was Dr. Aderhold’s opinion that the right hand had a 25% disability.' This corresponds to the hospital’s findings on April 13, 1942.
Dr. Milton Honigman, of Alexandria, first saw and examined the plaintiff on February 2, 1949, and again on June 4th following. As a witness for the plaintiff he described in detail the physical conditions of the hand and wrist. On cross-examination he was asked the following questions *772 and gave answers thereto, as here quoted, viz. :
“Q. Doctor, you practice at the Baptist Hospital? A. Yes, sir.
“Q. Do you know Dr. Barker, the X-ray man up there? A. Yes, sir.
“Q. I hand you what purports to be a copy of the X-ray report on this man by Dr. Barker of the Baptist Hospital and ask you to read that over and then I will ask you a question about it. (Witness does so.) What I want to ask you is whether that appears to be substantially what you found with reference to the X-ray showings in this case? Does that appear to be substantially what you found with reference to his right hand? A. Yes, sir.
“Q. If I were to tell you then, doctor, that this report was made by Dr. Barker on April 13, 1942, the conclusion would be obviously that the trouble with his hand was an old injury and not any injury in October, 1948, would it not? A. Unless the accident re-damaged the hand."
Based upon complaints of the patient and subjective symptoms, Dr. Honigman was of the opinion that plaintiff’s lower back has a sacro-iliac strain. He found his physical condition unchanged between time of the two examinations.
Drs. Texada and Aderhold agreed with Dr. Honigman that Dr. Barker’s report, above mentioned, in substance, described plaintiff’s physical condition as found by them after the accident of October, 1948.
So íar as concerns disability allegedly arising from back injury and hernia, the record fully warrants ruling it out. Drs. Texada and Aderhold are positive there is no evidence of hernia, while Dr. Honigman only found evidence of potential 'hernia, not sufficient to create disability and which did not necessarily arise fro|m! trauma.
It is shown that a back strain of the herein discussed character is curable within a week or ten days. There is no evidence to support what plaintiff, says on this- subject. The symptoms are all subjective, and his credibility has been so badly marred by the record, we are not warranted in according to his testimony the weight and credit that are usually accorded one seeking compensation on account of physical injury. The weight of this conclusion is augmented by the fact that when plaintiff reported to Dr. Texada on October 25th, he complained only of injury to his hand and wrist, and stated that these parts had been hit by a board. It will be recalled that he alleged that immediately after the accident the back and hernial pain set in.
There is serious controversy as to whether a board of the dimensions described by the plaintiff, when once it has advanced on the rollers -beyond the rip saw, can be “kicked” back, as alleged. We entertain some doubt of it. Anyway, we cannot conceive how this large board could have been forcibly dislodged from its proper position, hurled into the air and against plaintiff with the force he says, and not one of the several co-laborers working in close proximity thereto, so far as the record discloses, have seen the accident. This can only be accounted for by concluding that the acT cident was not of the character claimed by the plaintiff.
The testimony of Earl Allen, a witness for plaintiff, is illuminating. He testified that he was working about two feet from plaintiff at the time he claims to have been hurt. He was asked if he saw him get hurt, and gave the following testimony in reply, to wit: “A. I might as well have seen it. When I looked around he had a hold of his side where the board had kicked out.
“Q. Did you see the board that had kicked out of the machine? A. Yes, sir, I saw it.
“Q. Where was the board that had kicked out of the machine? A. It was laying down off on the side — it wasn’t too long a board; it was a short board.
“Q. Was it close by where Jack was standing ? A. It wasn’t too far from him. It was close by.
“Q. Was that the only board on the floor? A. The only one I saw.”
* * * # * *
*773 “Q. Allen, you say there was a short board that kicked out. How short was it? A. It could have been about 2y2 feet, maybe.
“Q. About that long — about 2% feet? A. It’s been quite a good while; I can’t remember exactly, but it was about that long.
“Q. How wide was it? A. A little board about 1% inches wide.
“Q. And about 21/2 feet long? A. Yes.
“Q. You saw it on the ground? A. It was back on the floor.
“Q. And you presumed that was the board because you didn’t see it? A. He had his hand on his side.
“Q. But you didn’t see the board hit him? A. He said it was the one.”
This small piece of lumber may have, in some manner, played a part in'the accident; and, again, the hand may have, in some way, got slightly bruised in a roller as happened once before.
The record indicates that plaintiff, after being discharged by the doctors in April, 1942, worked regularly at saw mills notwithstanding the absence of two fingers of the left hand, and .malformation of the right. We are of the opinion that now the right hand is in practically the same condition as it was ' following the 1941 accident, save possibly the little finger thereof may be slightly more out of its normal relation to the fingers beside it. This, if true, may be ascribed to plaintiff’s own carelessness in massaging it. Anyway, it is not made clear that the finger’s present condition militates to any material extent against doing the same character of work he was performing when the accident occurred.
Plaintiff was required to prove his case. He has failed to do so.
For the reasons herein assigned, the' judgment from which appealed is annulled,' avoided and reversed; and there is now judgment in defendants’ favor, rejecting the demand and dismissing the suit at plaintiff’s cost. ■ :